TIMOTHY J. LONG (SBN 137591) - tjlong@orrick.com
TINA M. TRAN (SBN 186529) - ttran@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  +1-213-629-2020
Facsimile:    +1-213-612-2499

Attorneys for Defendant
HALLMARK MARKETING CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHELLE INGALLS, suing individually and on behalf of all others similarly situated persons,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>HALLMARK MARKETING CORPORATION, a Delaware corporation, and defendants DOES 1 through 10, inclusive,<br>　　　　　Defendants. | No.:  CV08-04342 VBF (Ex)<br>No.:  CV08-05330 VBF (FFMx)<br>No.:  CV08-07481 VBF (Ex)<br><br>CLASS/COLLECTIVE ACTION<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT (AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION)**<br><br>Date:　　　May 18, 2009<br>Time:　　　1:30 p.m.<br>Judge:　　　Hon. Valerie Baker Fairbank |
| NIKKI FUZELL, an individual, on behalf of herself, all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>HALLMARK MARKETING CORPORATION, a Delaware corporation with its principal place of business in the State of Missouri,<br><br>　　　　　Defendants. | |
| BEVERLY WEAVER et al., Plaintiffs,<br><br>　　v.<br><br>HALLMARK MARKETING CORP.,<br><br>　　　　　Defendants. | |

1

2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................... 1

II.     FACTUAL BACKGROUND ..................................................... 2

III.    SUMMARY OF SETTLEMENT TERMS ................................. 4

IV.     PRELIMINARY SETTLEMENT APPROVAL PROCESS .......... 6

V.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS
        APPROPRIATE ....................................................................... 8

        A.    The Terms Of The Proposed Settlement Provide Reasonable
              Compensation for Plaintiffs' Damages .............................. 10

        B.    The Settlement Is The Product Of Serious, Arm's-Length,
              Informed Negotiations And There Are No Indications Present
              To Doubt Its Fairness ...................................................... 12

VI.     PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE .............. 15

        A.    FRCP 23(a) Requirements For Class Certification Are Met ............. 15

              1.    Numerosity ................................................... 15

              2.    Commonality ................................................. 16

              3.    Typicality ..................................................... 16

              4.    Adequacy of Representation .............................. 17

        B.    FRCP 23(b) Requirements For Class Certification Are Met ............. 17

              1.    Predominance ................................................ 18

              2.    Superiority ................................................... 18

VII.    THE PROPOSED CLASS NOTICE IS APPROPRIATE ............ 19

        A.    The Class Notice Satisfies Due Process ............................ 19

        B.    The Proposed Notice Is Accurate And Informative ............ 19

VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ............. 20

IX.     CONCLUSION ...................................................................... 21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Acosta v. Trans Union LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) ..............................................................8-9

*Amchem Prods., Inc. v. Windsor*,
117 S. Ct. 2231, 521 U.S. 591 (1997) ....................................... 18

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992).................................................. 7

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981).............................................. 11, 13

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977)................................................ 13

*Cox v. American Cast Iron Pipe*,
784 F.2d 1546 (11th Cir. 1986)........................................ 15, 16, 18

*Gen. Tel. Co. of the SW v. Falcon*,
12 S.Ct. 2364, 457 U.S. 147 (1982) ....................................... 16

*Griffin v. Carlin*,
755 F.2d 1516 (11th Cir. 1985)............................................. 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998).........................................*passim*

*Martens v. Smith Barney*,
181 F.R.D. 243 (S.D.N.Y. 1998)............................................ 13

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003)............................................... 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......................................... 6

*Officers for Justice v. Civ. Serv. Comm'n of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .............................................. 13

*In re Prudential Securities, Inc.*,
163 F.R.D. 200 (S.D.N.Y. 1995)............................................ 9

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
157 F. Supp. 2d 561 (E.D. Pa. 2001)....................................... 6

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007)..................................... 6

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ......................................................................... 9

*In re Traffic Exec. Ass'n*,
   627 F.2d 631 (2d Cir. 1980) ........................................................................ 9

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ........................................................................ 8

*Welmer v. Syntex*,
   117 F.R.D. 641 (N.D. Cal. 1987) .............................................................. 17

*Yamamoto v. Omiya*,
   564 F.2d 1319 (9th Cir. 1977) ..................................................................... 9

**FEDERAL STATUTES**

Federal Rules of Civil Procedure

    Rule 23(a) .................................................................................... 15, 16

    Rule 23(a)(4) ..................................................................................... 17

    Rule 23(b)…........................................................................ 15, 18, 19

    Rule 23(b)(3) ............................................................................... 17, 19

    Rule 23(c)(2) ..................................................................................... 20

    Rule 23(c)(2)(B) ............................................................................... 19

    Rule 23(c)(3) ..................................................................................... 20

    Rule 23(e) ................................................................................... 6, 15

    Rule 23(e)(4)(A) ............................................................................... 20

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (2006)………………..…….2

**CALIFORNIA STATUTES**

California Labor Code § 2698 ..................................................................... 1, 4, 12

California Business and Professions Code § 17200...……………………..……2, 3

**MISCELLANEOUS**

2, 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
   ("*Newberg*"), §§ 8.21, 8.39, 11.22, 11.25-26, 11.41 (4th ed. 2002) ...........*passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

Manual for Complex Litigation (Third) § 30.41, 30.211-12 (1995)………...6, 7, 9, 20

Manual for Complex Litigation (Fourth) § 21.62 (2004)…………...……………...6

1    **I.      INTRODUCTION**

2            Plaintiffs (Rochelle Ingalls, Nikki Fuzell, and Beverly Weaver on

3    behalf of themselves and others similarly situated) and Defendant Hallmark

4    Marketing Corp. ("Hallmark") (collectively the "Parties") seek preliminary

5    approval of their proposed class action settlement.  Subject to Court approval,

6    Plaintiffs and Hallmark have settled their claims against Hallmark for

7    $5,625,000.00 (which includes all settlement payments, Plaintiffs' attorneys' fees

8    and costs, the costs of settlement administration, named Plaintiffs' awards, class

9    certification declarants' awards, the employer's portion of payroll taxes attributable

10   to settlement awards to authorized claimants, payment to the California Workforce

11   Development Agency pursuant to California Labor Code section 2698 *et seq*., and a

12   potential charitable contribution to the American Red Cross and/or the Salvation

13   Army).  This proposed settlement ("Settlement")[1] resolves all of the Named

14   Plaintiffs' and Settlement Class Members' claims against Hallmark.  The

15   Settlement is with the California classes in the Ingalls, Fuzell, and Weaver cases.

16   The Court will recall that Ingalls' case had included a claim under FLSA for class

17   members in other states.  However, the Court denied provisional certification of the

18   FLSA claims. The non-California FLSA claimants are not included in the

19   Settlement, and the FLSA claims in the Ingalls case are being dismissed.

20           The proposed Settlement satisfies all of the criteria for preliminary

21   settlement approval under Federal law, and is reasonable and fair.  Accordingly, the

22   Parties request that the Court provisionally certify the proposed Settlement Class

23   for settlement purposes only on the California state law claims; grant preliminary

24   approval of the proposed Settlement; preliminarily enjoin Settlement Class

25   Members from bringing any claims to be released pursuant to the proposed

26

27   _____

     [1] A copy of the fully executed Settlement Agreement, including the exhibits thereto,
28   is attached as Exhibit A to the Declaration of Timothy J. Long in Support of the
     Joint Motion for Preliminary Approval of Settlement filed herewith.

1   Settlement; approve the proposed Notice of Pendency of Class Action, Proposed

2   Settlement and Hearing ("Notice"), and Claim Form ("Claim Form") (collectively

3   the "Settlement Documents"); confirm the appointment of Rochelle Ingalls, Nikki

4   Fuzell, and Beverly Weaver as Settlement Class Representatives; confirm the

5   appointment of Plaintiffs' counsel as Settlement Class Counsel; confirm the

6   appointment of Rust Consulting, Inc. as Settlement Administrator (with the Parties

7   reserving the right to name a new Administrator by mutual agreement); set

8   deadlines for mailing Settlement Documents and for submitting a claim, opting out

9   or objecting to the Settlement; and schedule a final approval hearing.

10   **II.    FACTUAL BACKGROUND**

11          On July 1, 2008, Rochelle Ingalls ("Ingalls") filed a proposed Class

12   Action Complaint against Defendants and various Doe defendants in the United

13   States District Court for the Central District of California on behalf of herself and

14   all other employees similarly situated.  In her Complaint (later amended), Ingalls

15   alleged causes of action for violations of the Fair Labor Standards Act, section 207

16   ("the FLSA claim") and various other alleged causes of action under the California

17   Labor Code.  In her Complaint, Ingalls also sought pre and post judgment interest,

18   issuance of an injunction, restitution, attorneys' fees, and costs.  On July 3, 2008,

19   Beverly Weaver ("Weaver") filed a proposed Class Action Complaint against

20   Defendants and various Doe defendants in the Superior Court of the State of

21   California in and for the County of San Joaquin on behalf of herself and all other

22   employees similarly situated, which case Defendants properly removed to federal

23   court on or about October 2, 2008.  The action was transferred to the Central

24   District of California on November 13, 2008.  In her Complaint, Weaver alleged

25   causes of action under the California Labor Code as well as an unfair competition

26   claim pursuant to California Business and Professions Code, section 17200.  In her

27   Complaint, Weaver also sought pre and post judgment interest, issuance of an

28   injunction, restitution, attorneys' fees, and costs.  On August 14, 2008, Nikki Fuzell

1   ("Fuzell") filed a proposed Class Action Complaint against Defendants in the

2   United States District Court Central District of California on behalf of herself and

3   all other employees similarly situated.  In her Complaint, Fuzell alleged causes of

4   action under the California Labor Code as well as an unfair competition claim

5   pursuant to California Business and Professions Code section 17200.  In her

6   Complaint, Fuzell also sought pre and post judgment interest, issuance of an

7   injunction, restitution, attorneys' fees, and costs.

8           On October 28, 2008, the cases of Ingalls and Fuzell were consolidated

9   by Order of this Court.  On January 14, 2009, the Court denied Ingalls' motion for

10  conditional certification of the FLSA Claims class.  On March 6, 2009, the Court

11  stayed proceedings for 30 days to allow the parties to finalize their tentative

12  settlement and file their motion for preliminary approval and settlement documents.

13  Because of the stay,  Plaintiffs have not filed a motion for class certification of the

14  California state law claims, which motion was, absent the current stay, originally

15  due March 30, 2009.  The Settlement is with the California class of Hallmark's

16  hourly employees during the class period.

17          Class Counsel have conducted a significant investigation into the facts

18  of this class action case, including: conducting depositions of key Hallmark

19  management level employees, conducting extensive interviews of their clients;

20  reviewing the Dispute Resolution Program agreement applicable to Plaintiffs'

21  claims; reviewing hundreds of verified statements of Hallmark's current and former

22  employees employed in California and Hallmark's written policies applicable to

23  members of the Settlement Class, reflecting, among other things, Hallmark's

24  alleged expectations of members of the Settlement Class for recording all hours

25  worked and receiving payment; conducting depositions of key Hallmark

26  management level employees; reviewing the thousands of pages of documents

27  Hallmark has produced in response to Plaintiffs' multiple requests for the

28  production of documents; reviewing Hallmark's responses to Plaintiffs' multiple

1   interrogatories and requests for production; and reviewing Hallmark's responses to

2   Plaintiffs' multiple 30(b)(6) notices for deposition.

3          Additionally, extensive computer data on the number of class

4   members, compensation, hours worked, vacation usage and expense reimbursement

5   was produced by Hallmark and provided to Plaintiffs for expert analysis before the

6   mediation, and this data was relied upon in negotiating the Settlement.  Class

7   Counsel have also investigated the applicable law as applied to the facts discovered

8   regarding Plaintiffs' alleged claims and potential defenses thereto as well as

9   Plaintiffs' claimed damages.

10         The Parties voluntarily agreed to engage in settlement discussions and

11  these negotiations commenced with a formal mediation session before well-

12  respected neutral mediator Mark Rudy on January 22, 2009.  The mediation session

13  did not result in a settlement, but thereafter, Mr. Rudy made a mediator's proposal

14  to resolve the parties' impasse.  The proposal served as a basis for further

15  negotiations.  Thereafter, the Parties engaged in extensive informal negotiations

16  with the assistance of Mr. Rudy, taking into account his opinion before agreeing to

17  the Settlement being presented to the Court for its consideration.

18  **III.    SUMMARY OF SETTLEMENT TERMS**

19         The Settlement provides that Hallmark will pay a maximum of

20  $5,625,000 (five million, six hundred twenty-five thousand) in a fund to

21  compensate Named Plaintiffs and Settlement Class Members for their alleged

22  damages, to pay Plaintiffs' attorneys' fees and costs, to pay the costs of settlement

23  administration, to compensate the Named Plaintiffs and Conditional Class

24  Certification Declarants for their service to the Settlement Class, to pay the

25  employer's portion of payroll taxes attributable to Settlement Awards to Authorized

26  Claimants,  to make payment to the California Workforce Development Agency

27  pursuant to California Labor Code section 2698 *et seq.* (the "PAGA Payment"), and

28  to potentially make a charitable contribution to the American Red Cross and/or

1   Salvation Army, or both -- depending on the claims rate of the Settlement Class, as

2   well as the size of any residue.  Settlement Class Members making valid and timely

3   claims are entitled to up to the $5,625,000 maximum settlement fund, less the

4   amount sought for Plaintiffs' attorneys' fees and costs (which Plaintiffs intend to

5   seek in the amount of $1,875,000.00 and $75,000.00, respectively, without

6   objection by Hallmark), the costs of settlement administration, the amounts sought

7   in awards to the Named Plaintiffs (which Plaintiffs intend to seek in the amount of

8   $30,000 – i.e., $10,000 to each Named Plaintiff) and Conditional Class

9   Certification Declarants (which plaintiffs intend to seek in the amount of $30,000 –

10  i.e., $10,000 for each of the three Conditional Class Certification Declarants)[2] for

11  their service to the Settlement Class, the employer's portion of payroll taxes

12  attributable to settlement awards to authorized claimants, and the PAGA Payment

13  (which shall be in the amount of 1% of the gross amount, $56,250).  Depending on

14  the costs of settlement administration, the Parties anticipate that this will leave

15  approximately $3,458,750.00 that may be distributed to Authorized Claimants.

16        To further the purposes of the Action and ensure integrity of the

17  Settlement, the Parties have structured the Settlement so that if the participation by

18  Authorized Claimants is less than anticipated, Hallmark will make a charitable

19  contribution of the residue under the cy pres doctrine to the American Red Cross

20  and/or Salvation Army, or both.  Pursuant to the Settlement, Settlement Class

21  Members will release Hallmark of any and all claims, whether known or unknown,

22  that are alleged or could have been alleged based on the facts alleged in any of the

23  complaints filed in the three cases comprising this consolidated action.

24  ///

25  ///

26  _____
    [2] The Class Certification Declarants are Sandy Ripp, Carol White, and Vanessa
27  Yanez.  Each of the Class Certification Declarants submitted a declaration in
    support of Named Plaintiffs' motion for conditional class certification on Plaintiffs'
28  FLSA claims and were prepared to serve as additional class representatives had the
    Court granted conditional certification to the FLSA claims.

IV.   **PRELIMINARY SETTLEMENT APPROVAL PROCESS**

A class action may not be dismissed, compromised or settled without court approval.  Fed. R. Civ. P. ("FRCP") 23(e).  Judicial proceedings under the Federal Rules of Civil Procedure have led to a defined procedure and specific criteria for settlement approval in class actions that are thoroughly described in the Manual for Complex Litigation (Fourth) ("*Manual* (Fourth)") § 21.62 (2004).  Federal Rule of Civil Procedure 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation (Third) § 30.41 (1995)).

Preliminary settlement approval and notice to the proposed class are appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n. 12 (E.D. Pa. 2001)); *see also Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1027 (9th Cir. 1998) (the court's task is to "balance a number of factors," including "the risk, expense, complexity, and likely duration of further litigation," "the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement").  This procedure for preliminary approval of settlement agreements, endorsed by the leading class action commentator, Professor Newberg, and commonly used by Federal courts, safeguards class members' procedural due process rights and enables a court to fulfill its role as the "guardian" of the class.  *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ("*Newberg*"), § 11.22 (4th ed. 2002).

1       The approval or rejection of the proposed settlement is committed to

2   the Court's sound discretion.  *See Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268,

3   1276 (9th Cir. 1992) (in context of class action settlement, appellate court cannot

4   "substitute [its] notions of fairness for those of the [trial] judge and the parties to

5   the agreement," and will reverse only upon strong showing of abuse of discretion).

6   The court's preliminary evaluation of the proposed settlement purports to determine

7   whether it is within the permissible "range of reasonableness" and thus, whether the

8   notice to the class is appropriate.  4 *Newberg* § 11.25-26; Manual for Complex

9   Litigation (Third) ("*Manual* (Third)") § 30.41 (1995).

10      The Parties request that the Court provisionally certify the proposed

11  Settlement Class at this time.  Provisional class certification is appropriate at the

12  preliminary approval stage where, as here, the proposed settlement class (as defined

13  in the parties' Agreement) has not previously been certified by the Court, and the

14  requirements for certification are met. 4 *Newberg* § 11.22.  Pragmatically,

15  provisional class certification facilitates distribution of notice on the terms of the

16  proposed settlement and the date and time of the final approval hearing to all

17  settlement class members.  *See Manual* (Third) § 30.41.  The additional rulings

18  sought on this motion – approving the form, content and distribution of the

19  Settlement Documents and scheduling a formal fairness hearing – facilitate the

20  settlement approval process, and are also typically made at this preliminary

21  approval stage.  4 *Newberg* § 11.26.  Neither formal notice nor a hearing is required

22  for the Court to grant provisional class certification and preliminary approval; the

23  Court may grant such relief upon an informal application by the settling parties, and

24  may conduct any necessary hearing in court or in chambers, at the Court's

25  discretion.  *See Manual* (Third) § 30.41.

26      The following schedule sets forth a proposed sequence for the relevant

27  dates and deadlines, assuming this Court grants preliminary approval to the

28  proposed Settlement. This is outlined in the Proposed Order filed herewith.

| Forty (40) days after Preliminary Approval: | Claims Administrator mails Notice of Settlement and Claim Forms. |
|---|---|
| Thirty (30) days after mailing of Notice: | Postmark deadline for Plaintiffs to submit an Exclusion Form and/or submit written objections to the Settlement. |
| Sixty (60) days after mailing of Notice: | Postmark deadline for Settlement Class Members to submit a Claim Form. |
| 125 DAYS FROM PRELIMINARY APPROVAL ORDER: | Last day for filing and service of papers in support of Final Settlement Approval. |
| 155 DAYS FROM PRELIM APPROVAL ORDER: | Final Settlement Approval Hearing. |
| Fifteen (15) days after the Effective Date of the Settlement: | Deadline for payment of Fees Award, Costs Award, Named Plaintiffs' Awards, Class Certification Declarants' Awards, Administration Payment, PAGA Payment; Settlement Awards to Authorized Claimants; and charitable contribution (if any). |

## V.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation.  *See* 4 *Newberg* § 11.41 (and cases cited therein); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Preliminary evaluation of class action settlements is intended to determine only whether the proposed settlement is within the range of possible approval or whether it is potentially fair, as the Court will make a final determination on adequacy at the final approval hearing.  *See Acosta v. Trans*

1   *Union LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007); *In re Traffic Exec. Ass'n*, 627

2   F.2d 631, 633-34 (2d Cir. 1980); 4 *Newberg* § 11.25.  The Court thus has broad

3   powers to determine whether a proposed settlement is fair under the circumstances

4   of the case,  *see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.

5   1993); *Acosta*, 243 F.R.D. at 384 (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1325

6   (9th Cir. 1977)), and preliminary approval of a settlement agreement should be

7   granted unless there are reasons to doubt its fairness or there are other "obvious

8   deficiencies" in the proposed settlement making it clear it would not ultimately

9   weather a final approval hearing.  *See In re Prudential Securities, Inc.*, 163 F.R.D.

10  200, 209 (S.D.N.Y. 1995).

11          To make this fairness determination, courts consider several relevant

12  factors, including the strength of the plaintiffs' case, the risk, expense, complexity

13  and likely duration of further litigation, the risk of maintaining class action status

14  through trial, the amount offered in settlement, the extent of discovery completed

15  and the stage of the proceedings, as well as the experience and views of counsel.

16  *Torrisi*, 8 F.3d at 1375.  This list of factors is not exclusive, however, and the court

17  may balance and weigh factors differently depending on the factual circumstances

18  of each case.  *See id.* at 1376.  The *Manual* summarizes the preliminary approval

19  criteria as follows:

20              If the preliminary evaluation of the proposed settlement
                does not disclose grounds to doubt its fairness or other
21              obvious   deficiencies,   such   as   unduly   preferential
                treatment of class representatives or of segments of the
22              class, or excessive compensation for attorneys, and
                appears to fall within the **range of possible approval**, the
23              court should direct that notice . . . be given to the Class
                Members of a formal fairness hearing, at which
24              arguments and evidence may be presented in support of
                and in opposition to the settlement.
25

26          *Manual* (Third) § 30.41; *see also* 4 *Newberg* § 11.25.  When

27  examining settlement agreements, a presumption of fairness exists where: (1) the

28  settlement is reached through arm's-length bargaining; (2) investigation and

- 9 -

1  discovery are sufficient to allow counsel and the court to act intelligently; (3)

2  counsel is experienced in similar litigation; and (4) the percentage of objectors is

3  small.  4 *Newberg* § 11.41.

4          Although commonly used by courts at the final approval stage, the

5  presence of these factors would also suggest fairness during the preliminary

6  approval stage, where the threshold for adequacy is considerably lower.

7  Furthermore, courts must give "proper deference to the private consensual decision

8  of the parties," since "the court's intrusion upon what is otherwise a private

9  consensual agreement negotiated between the parties to a lawsuit must be limited to

10  the extent necessary to reach a reasoned judgment that the agreement is not the

11  product of fraud or overreaching by, or collusion between, the negotiating parties,

12  and that the settlement, taken as a whole, is fair, reasonable and adequate to all

13  concerned." *Hanlon,* 150 F.3d at 1027 (citation omitted).

14          Here, as shown below, the proposed Settlement falls well within the

15  range of reasonableness.  The terms of the agreement are fair and adequate.  The

16  Plaintiffs have engaged in extensive discovery related to their claims.  The Parties

17  have conducted themselves in informed, good faith arms-length negotiations with

18  adequate access to necessary information, and did so with the assistance of

19  experienced mediator Mark Rudy, who ultimately proposed a settlement along the

20  lines of Parties' agreed Settlement.  Moreover, both Settlement Class Counsel and

21  Hallmark's counsel are experienced in employment class action matters and are

22  capable of assessing the strengths and weaknesses of claims against Hallmark and

23  the benefits of the proposed Settlement under the circumstances of the case and in

24  the context of a private, consensual agreement.  Accordingly, preliminary approval

25  of the Settlement is appropriate.

26  **A.**     **The Terms Of The Proposed Settlement Provide Reasonable**
        **Compensation for Plaintiffs' Damages.**

27

28  Ultimately, a settlement should stand or fall on the adequacy of its

1   terms.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir.

2   1981) (holding that slight formal discovery is not dispositive in determining

3   whether to approve a settlement agreement).  The Court must determine that the

4   Agreement is within the acceptable range of reasonableness without conducting an

5   investigation tantamount to a trial on the merits.  *See id.* at 212-13.  Here, the terms

6   of this Agreement are adequate, reasonable, and the product of informed

7   negotiations.

8            The proposed relief was painstakingly calculated to adequately and

9   fairly provide for Plaintiffs' alleged damages.  The terms are therefore very

10  reasonable.  Authorized Claimants (those eligible individuals who timely file

11  claims forms) will receive settlement awards calculated based on the number of

12  hours the Claimant recorded during the Class Period as a percentage of the total

13  hours recorded by Claimants during the Class Period.  Specifically, each Claimant

14  who submits a valid and timely claim shall be paid their share times the Net

15  Settlement Amount.  The Claimant's share shall be calculated as follows:  [the

16  product of his/her total hours worked in California during the Class Period] times

17  [his or her Job Position Factor].  This product shall then be divided by the sum of

18  all hours worked by all Claimants in California times their respective Job Position

19  Factors.[3]

20           The formula used for calculating awards reflects the part-time nature

21  of the jobs performed by Settlement Class Members, and the variable hours they

22  work.  For each award, 50% will be allocated as back wages and reflected on a W-2

23  to the Claimant receiving the payment, and 50% will be allocated as penalties and

24  reflected on a 1099 to the Claimant receiving payment.

25           Of particular relevance to the reasonableness of the Agreement terms,

26  Hallmark has consistently maintained that it has ample legal and factual grounds for

---

[3] The Job Position Factor shall be approximately (to be determined based on
additional data):  Territory Assistants, Installation Leaders, and Administrative
Assistants, 1.000; Retail Merchandisers and all others, .696.

defending against this action on both class and merits issues.  Hallmark has continually denied the Named Plaintiffs' allegations.  Furthermore, Hallmark vigorously opposed conditional class certification of the FLSA claims, submitting in excess of fifty declarations.  Given Hallmark's position, the uncertainty, cost, and delay of litigation (and potential appellate review), plus the additional uncertainty posed by today's difficult economic environment, the large monetary relief provided by this Settlement ($5,625,000) is a fair and reasonable settlement amount to compensate Settlement Class Members for their alleged damages.   Class representatives (Named Plaintiffs) and declarants who submitted declarations in support of Plaintiffs' motion for conditional class certification with respect to the FLSA claims will receive incentive awards as well, in acknowledgement of their service to the proposed class.

Beyond this, the Settlement also provides a significant public benefit through payment of $56,250 to the California Workforce Development Agency pursuant to California Labor Code section 2698 *et seq*. (the Private Attorneys' General Act).  Thus the terms of the Agreement itself are fair, reasonable, and provide significant recovery for Plaintiffs.

**B.**  **The Settlement Is The Product Of Serious, Arm's-Length, Informed Negotiations And There Are No Indications Present To Doubt Its Fairness.**

The Parties engaged in arm's-length, informed negotiations to reach this Settlement Agreement.  Although extensive formal discovery is unnecessary in determining whether a settlement agreement is fair, reasonable, and adequate, *see In re Corrugated Container Antitrust Litig.*, 643 F.2d at 211 (holding that formal discovery is not a "ticket to the bargaining table" as long as there is the "desired quantum of information necessary" to inform counsel's judgment in reaching a settlement agreement), the Plaintiffs here in fact engaged in significant discovery.  The judgment of experienced counsel is also an important factor in a court's

1   determination that negotiations were fair and informed.  Absent fraud and collusion,

2   the court may not only *rely* upon the judgment of experienced counsel, but should

3   be hesitant to "substitute its own judgment for that of counsel." *Cotton v. Hinton*,

4   559 F.2d 1326, 1330 (5th Cir. 1977); *see also Officers for Justice v. Civ. Serv.*

5   *Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Furthermore, the

6   involvement of an objective, third-party neutral tends to demonstrate the presence

7   of arm's-length negotiations.  *See Martens v. Smith Barney*, 181 F.R.D. 243, 262-

8   63 (S.D.N.Y. 1998).

9          Class Counsel have conducted significant investigation and discovery

10  into the facts of this class action case, including: extensive interviews of their

11  clients; reviewing the Dispute Resolution Program agreement applicable to

12  Plaintiffs' claims; reviewing extensive computer data on hours worked and

13  compensation, and working with a forensic accounting expert to build a model of

14  class-wide damages; reviewing hundreds of verified statements of Hallmark's

15  current and former employees employed in California; reviewing Hallmark's

16  written policies applicable to members of the Settlement Class, reflecting, among

17  other things, Hallmark's alleged expectations of members of the Settlement Class

18  that they record all hours worked and be paid for all hours reported, that they record

19  travel time and mileage, that they submit business expenses for payment, that they

20  take meal and rest breaks, and that they be paid pro rata for any vacation;

21  conducting depositions of key Hallmark management level employees; reviewing

22  the thousands of pages of documents Hallmark has produced in response to

23  Plaintiffs' multiple requests for the production of documents; reviewing Hallmark's

24  responses to Plaintiffs' multiple interrogatories and requests for production; and

25  reviewing Hallmark's responses to Plaintiffs' multiple 30(b)(6) notices for

26  deposition.

27          Counsel for Plaintiffs have also investigated the applicable law as

28  applied to the facts discovered regarding Plaintiffs' alleged claims and potential

1    defenses thereto and Plaintiffs' claimed damages.  Counsel is also aware that no

2    other putative class members have filed a Consent to Join, opted in to this action, or

3    otherwise affirmatively expressed an interest in participating in litigating the

4    California claims.

5              Based on this investigation and evaluation, the Settlement with

6    Hallmark for the consideration and on the terms set forth in the Stipulation is fair,

7    reasonable, adequate, and is in the best interest of the Settlement Class in light of all

8    known facts and circumstances, including the risk of significant delay, the risk the

9    Settlement Class will not be certified by the Court, defenses asserted by Hallmark,

10   and numerous potential appellate issues.  In reaching that conclusion, Class

11   Counsel and Hallmark's counsel have taken into consideration the considered

12   opinion of neutral third-party mediator Mark Rudy.  Mr. Rudy has served as a

13   mediator in employment and business-related matters for 20 years, and has

14   mediated approximately 3,000 disputes.  In 2006, Lawdragon honored Mr. Rudy as

15   one of the top 500 judges and mediators in America.  In 2008, Mr. Rudy was rated

16   the second best mediator in Northern California as a result of a survey done by San

17   Francisco Recorder.  Mr. Rudy has also been rated one of the top mediators in the

18   State of California by the Daily Journal for each year in which the publication has

19   rated neutrals.  Mr. Rudy specializes in employment disputes, and is a highly-

20   respected mediator with substantial experience mediating wage-and-hour class

21   actions.  The proposed settlement is along the lines of that ultimately recommended

22   by Mr. Rudy.  Moreover, both Settlement Class Counsel and Hallmark's counsel

23   are experienced in employment class action matters and are capable of assessing the

24   strengths and weaknesses of claims against Hallmark and the benefits of the

25   proposed Settlement under the circumstances of the case.  Accordingly, preliminary

26   approval of the Settlement Agreement is appropriate.

27              //

28              //

1  **VI.    PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE.**

2          Named Plaintiffs may, at the preliminary approval stage, request that

3  the Court provisionally approve certification of the class for settlement purposes,

4  conditioned upon final approval of the settlement.  4 *Newberg* § 11.26 (the court's

5  findings "at a preliminary hearing or conference concerning a tentative settlement

6  proposal . . . may be set out in conditional orders granting tentative approval to the

7  various items…. These conditional rulings may approve a temporary settlement

8  class, the proposed settlement, and the class counsel's application for fees and

9  expenses").  Before a court evaluates a settlement under Federal Rule of Civil

10  Procedure 23(e), it must determine that the settlement class satisfies the

11  requirements enumerated under Rule 23(a) and at least one of the requirements in

12  Rule 23(b).  *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003).  As discussed

13  below, the proposed class meets all of the requirements of certification for

14  Settlement purposes.

15          **A.    FRCP 23(a) Requirements For Class Certification Are Met.**

16          Preliminary approval of the settlement is justified because class

17  certification requirements exist for the Settlement Class.  Rule 23(a) provides the

18  factors that the Court looks to for class certification:  (1) the class is so numerous

19  that joinder of all members is impracticable; (2) there are questions of law or fact

20  common to the class; (3) the claims or defenses of the representative parties are

21  typical of the claims or defenses of the class; and (4) the representative parties will

22  fairly and adequately protect the interests of the class.  All four of these elements

23  have been satisfied by the proposed class for Settlement purposes.

24          **1.    Numerosity.**

25          If the class is sufficiently large that joinder of all members is

26  impractical or that individual joinder is impractical, the numerosity requirement is

27  met.  *See Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir. 1986).

28  The Settlement Class includes, but may not be limited to, those who worked for

1  Hallmark Marketing Corporation in the State of California on or after July 1, 2004,
2  as Retail Merchandisers, Territory Assistants, Installation Leaders, Administrative
3  Assistants, and Casual Laborers.  The total Settlement Class potentially consists of
4  more than 3,900 current and former Hallmark employees.  Therefore, joinder of
5  individual claims would be impractical and the numerosity requirement is met for
6  Settlement purposes only.

7               **2.    Commonality.**

8               The commonality requirement of Rule 23(a) is met if there are
9  common questions of fact and law to the class.  *Hanlon*, 150 F.3d at 1019 ("The
10 existence of shared legal issues with divergent factual predicates is sufficient, as is
11 a common core of salient facts coupled with disparate legal remedies within the
12 class").  Here, the Settlement Class Members seek remedies under California's
13 wage-and-hour laws.  The Parties' agreed Settlement compensates the Settlement
14 Class Members for these identical claims.  Under these circumstances, the
15 commonality requirement is satisfied for Settlement purposes.  *Id*. at 1019-20; *see*
16 *also Cox*, 784 F.2d at 1557.

17              **3.    Typicality.**

18              The typicality requirement of Rule 23(a) is met if the claims of the
19 Named Plaintiffs are typical of the class, though "they need not be substantially
20 identical."  *Hanlon*, 150 F.3d at 1020.  Factual differences may exist between the
21 class and the Named Plaintiffs, provided the claims arise from the same events or
22 course of conduct and are based upon the same legal theories.  *Id*.  Moreover, the
23 typicality and commonality elements of Rule 23(a) "tend to merge" because both
24 assess whether the claims of the class and the named plaintiffs are sufficiently
25 interrelated to make class treatment appropriate.  *Gen. Tel. Co. of the SW v. Falcon*,
26 12 S.Ct. 2364, 457 U.S. 147, 157 n. 13 (1982).  Here, given the structure of the
27 Settlement, Named Plaintiffs satisfy the typicality requirement for Settlement
28 purposes because the claims of the Named Plaintiffs arise from the same factual

1   basis and are based on the same legal theories as those applicable to all Settlement

2   Class Members.  *Welmer v. Syntex* 117 F.R.D. 641, 644 (N.D. Cal. 1987).

3   **4.     Adequacy of Representation.**

4   Rule 23(a)(4) requires that the named plaintiff and class counsel fairly

5   and adequately represent and protect the interests of the class.  If the Named

6   Plaintiffs and Settlement Class Counsel have no interests adverse to the interest of

7   the proposed class members and are committed to vigorously prosecuting the case

8   on behalf of the class, then the adequacy requirement is met.  *Hanlon*, 150 F.3d at

9   1020; *see also Griffin v. Carlin*, 755 F.2d 1516 (11th Cir. 1985).  Additionally,

10  Class Counsel is highly experienced in employment, consumer and securities class

11  action litigation, having handled many such cases before, as shown by the resumes

12  of Clark & Markham LLP, The Parris Law Firm, and Grace Hollis filed herewith.

13  Here, under the proposed Settlement, the Named Plaintiffs will receive

14  a small award for their significant time and efforts assisting Class Counsel with

15  factual issues surrounding the case, and as a result of their executing a general

16  release of all claims against Hallmark.  These incentive awards represent a very

17  small percentage of the settlement, however, and do not constitute a sufficient

18  conflict of interest to foreclose fulfilling the adequacy requirement.  The Named

19  Plaintiffs and Settlement Class Counsel have prosecuted this Action vigorously on

20  behalf of the Settlement Class.  Further, Plaintiffs who wish to "opt out" of the

21  Settlement may do so.  *Hanlon*, 150 F.3d at 1021.  As a result, there is no conflict

22  of interest between the Named Plaintiffs and the Settlement Class Members and the

23  adequacy element is met.

24  **B.     FRCP 23(b) Requirements For Class Certification Are Met.**

25  The proposed settlement class also meets the requirements of Rule

26  23(b)(3) for settlement purposes because: 1) common questions predominate over

27  questions that affect individual members; and 2) class resolution is superior to other

28  available methods.  When assessing predominance and superiority, the Court may

1   consider that the class will be certified for Settlement purposes only.  *Amchem*

2   *Prods., Inc. v. Windsor*, 117 S.Ct. 2231, 521 U.S. 591, 618-620 (1997).  A showing

3   of manageability at trial is unnecessary; the dispositive inquiry at this stage is

4   "whether the proposed classes are sufficiently cohesive to warrant adjudication by

5   representation."  *Id.* at 618-20, 623; *see also Hanlon*, 150 F.3d at 1022.

### 1.   Predominance.

7        The proposed Settlement Class here is sufficiently cohesive to warrant

8   certification.  For Settlement purposes, common questions of fact and law affecting

9   proposed class members in this case predominate over questions that may affect

10  individual members.  In analyzing predominance, as with commonality, "[i]t is not

11  necessary that all questions of fact or law be common, but only that some questions

12  are common and that they predominate over individual questions."  *Cox*, 784 F.2d

13  at 1557.   The test is whether the proposed class is sufficiently cohesive to warrant

14  adjudication by representation.  Here, the proposed Settlement Class is sufficiently

15  cohesive because all Settlement Class Members share a common nucleus of facts

16  and potential legal remedies.  All of the Settlement Class Members also seek

17  damages based on primarily the same allegations.

### 2.   Superiority.

19       Particularly in the settlement context, class resolution is superior to

20  other available methods for the fair and efficient adjudication of the controversy.

21  *See Hanlon*, 150 F.3d at 1023.  The superiority requirement involves a

22  "comparative evaluation of alternative mechanisms of dispute resolution."  *Id.* at

23  1023.  Here, as in *Hanlon*, the alternative method of resolution is individual claims

24  for relatively small amounts of damages, proving uneconomical for potential

25  plaintiffs because the cost of litigation dwarfs potential recovery.  *Id*.  Therefore, a

26  class action is the preferred method of resolution.

27  ///

28  ///

1   **VII.   THE PROPOSED CLASS NOTICE IS APPROPRIATE.**

2   **A.   The Class Notice Satisfies Due Process.**

3   The proposed class notice meets the standards set forth in Rule

4   23(c)(2)(B) for classes certified under Rule 23(b)(3).  (A copy of the proposed

5   Class Notice is attached as Attachment 1 to Exhibit A of the Declaration of

6   Timothy J. Long ("Long Dec.") filed herewith.)  The notice plan here entails

7   mailing Notice to each known Plaintiff based on Hallmark's records.  Additionally,

8   the Settlement Agreement will be made available to any Plaintiff who requests it.

9   In addition, the Settlement Agreement provides specific authority to the Settlement

10   Administrator to handle issues of deficient responses from Settlement Class

11   Members, and skip tracing and more extensive manual searches for returned

12   Settlement Mailings.  The Notice and Settlement administration processes are

13   consistent with those approved by numerous state and federal courts and are, under

14   the circumstances of this case, the best notice practicable.

15   **B.   The Proposed Notice Is Accurate And Informative.**

16   The proposed Notice provides information on the meaning and nature

17   of the proposed Settlement Class, the terms and provisions of the Settlement, the

18   relief the Settlement will provide Settlement Class Members, the amount of

19   proposed incentive payments to Named Plaintiffs and Class Certification

20   Declarants, the amount Settlement Class Counsel seeks in fees and costs, the date,

21   time and place of the final Settlement approval hearing, and the procedure and

22   deadlines for opting out of the Settlement or for submitting comments and

23   objections.  The notice clearly and accurately describes the nature of the action, the

24   definition of the class certified, and the class claims and defenses.  *See*  Long Dec.,

25   Ex. A, Attachment 1.  The notice also informs class members that they may enter

26   an appearance through counsel if they so desire, indicates that the Court will

27   exclude from the class any member who requests exclusion, and explains the

28   binding nature of class judgment under Rule 23(c)(3).  *Id.*  The notice also provides

1    class members with an opportunity to file objections to the settlement as required
2    by Rule 23(e)(4)(A).  *Id.*

3           Further, the Notice also fulfills the requirement of neutrality in class
4    notices.  *See* 2 *Newberg* § 8.39.  It summarizes the proceedings to date, Plaintiffs'
5    allegations, and the terms and conditions of the Settlement, in an informative and
6    coherent manner, in compliance with the *Manual's* statement that "the notice
7    should be accurate, objective, and understandable to Class Members. . . ."  *Manual*
8    (Third) at § 30.211.  The Notice clearly states that the Settlement does not
9    constitute an admission of liability by Hallmark, and recognizes that the Court has
10   not ruled on the merits of the action.  It also states that the final Settlement approval
11   decision has yet to be made, and that no person who participates in this Settlement
12   may be retaliated against in any way by Hallmark under controlling law and Court
13   Orders.  Accordingly, the Notice complies with the standards of fairness,
14   completeness and neutrality required of a settlement class notice disseminated
15   under authority of the Court.  *See* Fed.  R. Civ. P. 23(c)(2), 23(e); 2 *Newberg* §§
16   8.21, 8.39; *Manual* (Third) §§ 30.211, 30.212.

17   **VIII.  <u>A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.</u>**

18          The last step in the Settlement approval process is the formal hearing,
19   at which the Court may hear all evidence and argument necessary to evaluate the
20   Settlement.  At that hearing, proponents of the Settlement may explain and describe
21   its terms and conditions and offer argument in support of Settlement approval, and
22   members of the Settlement Class, or their counsel, may be heard in support of or in
23   opposition to the Settlement Agreement.  The parties recommend that the hearing
24   be held 155 days after preliminary approval by the court, which would give the
25   parties sufficient time to complete the claims and notice process.  At the same time,
26   Plaintiffs will file and brief their applications for an award of attorneys' fees and
27   costs, and for the Plaintiffs' incentive awards, for approval and determination by
28   the Court at the same time as the final approval motion is heard.

## IX.   **CONCLUSION**

For all of the foregoing reasons, the Parties respectfully request that this Court grant preliminary approval to the proposed Settlement; preliminarily enjoin Settlement Class Members from bringing any claims to be released pursuant to the proposed Settlement; conditionally certify the Settlement Class for settlement purposes only; approve the proposed form of the Settlement Documents; confirm the appointment of Rochelle Ingalls, Nikki Fuzell, and Beverly Weaver as Settlement Class Representatives; confirm the appointment of Plaintiffs' Counsel as Settlement Class Counsel; confirm the appointment of Rust Consulting, Inc. as Settlement Administrator; set deadlines for mailing of the Settlement Document and for filing a claim in, opting out, or objecting to the Settlement; and schedule the final settlement approval hearing.

Dated: _Apr l 29_, 2009

R. REX PARRIS
JASON P. FOWLER
ALEXANDER R. WHEELER
**R. REX PARRIS LAW FIRM**

_____
ALEXANDER R. WHEELER
Attorneys for Plaintiff Rochelle Ingalls

Dated: _____, 2009

DAVID R. MARKHAM
R. CRAIG CLARK
JAMES M. TREGLIO
**CLARK & MARKHAM LLP**

_____
DAVID R. MARKHAM
Attorneys for Plaintiff Nikki Fuzell

JOINT MOTION FOR PRELIMINARY APPROVAL
CV08-04342 VBF (Ex), No. CV08-05330 VBF (FFMx),
No. CV08-07481 VBF (Ex)

## IX.   CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that this Court grant preliminary approval to the proposed Settlement; preliminarily enjoin Settlement Class Members from bringing any claims to be released pursuant to the proposed Settlement; conditionally certify the Settlement Class for settlement purposes only; approve the proposed form of the Settlement Documents; confirm the appointment of Rochelle Ingalls, Nikki Fuzell, and Beverly Weaver as Settlement Class Representatives; confirm the appointment of Plaintiffs' Counsel as Settlement Class Counsel; confirm the appointment of Rust Consulting, Inc. as Settlement Administrator; set deadlines for mailing of the Settlement Document and for filing a claim in, opting out, or objecting to the Settlement; and schedule the final settlement approval hearing.

Dated: _____, 2009     R. REX PARRIS
                                   JASON P. FOWLER
                                   ALEXANDER R. WHEELER
                                   **R. REX PARRIS LAW FIRM**

                                   _____
                                   ALEXANDER R. WHEELER
                                   Attorneys for Plaintiff Rochelle Ingalls

Dated: _4/28_, 2009               DAVID R. MARKHAM
                                   R. CRAIG CLARK
                                   JAMES M. TREGLIO
                                   **CLARK & MARKHAM LLP**

                                   _____
                                   DAVID R. MARKHAM
                                   Attorneys for Plaintiff Nikki Fuzell

Dated: **4-29**, 2009

GRAHAM S. P. HOLLIS
**GRACEHOLLIS LLP**

_____
GRAHAM S. P. HOLLIS
Attorneys for Plaintiff Beverly Weaver

Dated: **4-29**, 2009

TIMOTHY J. LONG
TINA M. TRAN
**Orrick, Herrington & Sutcliffe LLP**

_____
TIMOTHY J. LONG
Attorneys for Defendant

OHS West:260644092.4

JOINT MOTION FOR PRELIMINARY APPROVAL
CV08-04342 VBF (Ex), No. CV08-05330 VBF (FFMx),
No. CV08-07481 VBF (Ex)